UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BILL JONES | CIVIL ACTION |
| VERSUS | NO: 18-2755 |
| NEW ORLEANS REGIONAL PHYSICIAN HOSPITAL ORGANIZATION, INC. D/B/A PEOPLES HEALTH NETWORK | SECTION: "A" (3) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a civil action brought by plaintiff Bill Jones pursuant to the Fair Labor Standards Act ("FLSA") against his former employer, defendant New Orleans Regional Physician Hospital Organization, Inc. d/b/a Peoples Health Network. Jones alleges that Peoples Health terminated his employment in retaliation for making an FLSA complaint.

The case was tried to the Court sitting without a jury on October 15-16, 2019, as to the issue of liability only. Having considered the testimony and evidence at trial, the depositions submitted in lieu of live testimony, the arguments of counsel, and applicable law, the Court now enters the following Findings of Fact and Conclusions of Law in accordance with Federal Rule of Civil Procedure 52(a). To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such. To the extent that any conclusion of law constitutes a finding of fact, the Court adopts it as such.

**I. FINDINGS OF FACT**

Peoples Health is an enterprise engaged in commerce that at all times relevant

had annual gross sales of at least $500,000.00.

Bill Jones started working for Peoples Health in March 2013 as a Contracting Specialist in its Network Development Department. Peoples Heath's Network Development Department is responsible for establishing and maintaining a network of health care providers who are willing and able to provide services to its plan members. As a Contracting Specialist, Jones's job duties included contacting health care providers to attempt to recruit them to join the Peoples Health's network, facilitating having those who were interested join the network, and maintaining a relationship with the providers who elected to and were approved to join the network.

In April 2015, Hunt Graham became Jones's immediate supervisor. Graham reported to Anthony Bonck, an assistant vice president with Peoples Health.

Jones had a history of performance problems at Peoples Heath that pre-dated the incidents that led to Jones's termination. (Exhibits 1 – 13). These performance issues were not insignificant.

On May 17, 2016, Bonck and Graham met with Jones about those problems. Ann Wolff from Human Resources was also present. The meeting did not go well. Jones left work abruptly on May 18, 2016 without telling anyone and did not return for four months. Peoples Health later discovered that on the day that Jones walked out his voicemail box was full and contained 95 unreviewed messages. (Exhibit 13). The work files that Jones left had little or no information in them. Jones used FMLA leave from May 19, 2016 until September 2016, when he finally returned to work.

Peoples Health was willing to continue with Jones's employment and give him a "fresh start" going forward. (Exhibit 17). Jones therefore avoided having to account for

the performance problems that had preceded his sudden, unannounced departure. Graham was less sanguine about the likelihood that Jones's performance problems would improve once he returned to work. (*Id.*). In October 2016 Graham gave Jones a below average employee performance review. (Exhibit 20).

Jones never believed that his performance appraisals accurately reflected his successes.

On March 10, 2017, Jones's father suffered a stroke. As of that time, Jones had exhausted his Family Medical Leave Act time and all of his paid time off. On March 22, 2017, Jones requested to work remotely 3-5 days per week during certain weeks so that he could care for his father and continue to be paid.

On March 28, 2017, Bonck emailed Jones to confirm that Peoples Health would allow him to work remotely and to outline Peoples Health's expectations relating to the approved remote work arrangement. (Exhibit 33 at 124). The specific requirements for the remote work arrangement were drafted by Anne Wolff with Human Resources. On April 23, 2017, Jones confirmed his agreement to comply with Peoples Health's expectations for the remote work arrangement. (Exhibit 24). Peoples Health trusted Jones to work remotely as agreed notwithstanding the significant performance issues in Jones's not so distant past.

On Friday, April 21, 2017, Bonck and Graham met with Jones to request that he provide copies of logs of daily activities for the days he had worked remotely in April. Graham had started to notice that things were not getting done while Jones claimed to be working remotely. Graham also started to notice occurrences that seemed to be part of the old pattern from 2016. Bonck was convinced that Jones was not honoring the

conditions of the remote work arrangement. Bonck was also convinced that Jones was being dishonest when he claimed that he was working remotely. Bonck believed that Jones should be fired at that point. Jones described this meeting as "heated."

This meeting, and Bonck's belief that Jones should be fired, occurred before Jones raised FLSA concerns with anyone at Peoples Health. Following the heated April 21, 2017 meeting with Bonck, Graham, and Wolff, Jones contacted Janice Ortego and asked to meet with her.

Janice Ortego was the Senior VP for Network Development and reported directly to the CEO for that division. Ortego had worked for Peoples Health for over 21 years before she retired shortly before trial. Ortego was Jones's third-level supervisor because Bonck reported to her. Although she was an executive with the company, Ortego did not work in the Human Resources department and she had no human resources training.

Ortego met with Jones on April 24, 2017. Jones recorded the meeting without her knowledge. The recording captured the entire meeting. During this meeting, which lasted approximately 30 minutes, Jones spent most of the time complaining about his supervisors who he believed were persecuting him unfairly. Eventually during the conversation, Jones complained that the reason he had no paid time off accumulated (and had to work remotely while caring for his father) was because Peoples Health would not give him credit for the time that he worked in excess of normal business hours. (Exhibit 46). Jones's sole reference to the FLSA during the approximately 30 minute conversation was the following statement:

> And, I mean, under – does the Federal – I mean, the Fair Standards Labor Act apply differently to PHN? And I don't mean that in – I mean, that very sincerely.

(Exhibit 46 at 23).

Jones regularly engaged in the disdainful and sneaky practice of secretly recording his conversations with co-workers, supervisors, and staff at Peoples Health.

The Court credits Ortego's testimony that even as of the April 24th meeting there were concerns regarding termination even if a decision to terminate Jones had not been finalized. Before the April 24th meeting Ortego had learned from Bonck that Jones was not honoring the agreed upon conditions regarding the remote work arrangement. (Exhibit 29).

The Court credits Ortego's testimony that Jones did not give her any FLSA materials at the meeting. The audio recording does not include any indication that Jones handed Ortego anything.

But most importantly, the Court credits Ortego's testimony that she did not communicate Jones's FLSA comment to Human Resources after the April 24th meeting. Bonck also testified credibly that Ortego did not discuss the April 24th meeting with him and did not share the details of the April 24th meeting with him. In fact, Jones had specifically requested that Ortego keep their conversation confidential and that she not share it with Ann Wolff from Human Resources. Ortego did not tell anyone about the details of the April 24th meeting, including the FLSA comment.

The Court does not credit Jones's claim that several follow-up meetings were set to discuss his FLSA concerns. Jones specifically asked, more than one time in the conversation, that Ortego keep his concerns about the FLSA confidential because he did not trust others, including Ann Wolfe. The Court credits Ortego's testimony that she

told no one about the FLSA question. Ortego was not familiar with that area of the law.

Ortego did not ask Bonck or anyone else at Peoples Health to gather negative information about Jones's performance in order to have a non-FLSA reason to terminate him. Ortego and Bonck testified credibly as to this point.

Jones did not comply with the terms of the remote work arrangement. (Exhibits 35, 36, 37). In fact, provider representatives were forced to reach out to other staff at Peoples Health because Jones was not returning emails. (Exhibit 30). Jones's explanation at the trial as to why this was not a problem was unconvincing. This is the same type of conduct that had happened in 2016. One would assume that monitoring and responding to emails, particularly important ones from contracting partners, would be the least that someone would do while working remotely.

Peoples Health was under no obligation to revoke the remote work arrangement in lieu of terminating Jones. Jones was fortunate that Peoples Health was willing to give him the chance to work remotely in order to care for his family but Jones failed to honor the agreement, and failed to honestly acknowledge that when confronted about it. The Court attaches no significance to the fact that the email agreement was not express in imposing the threat of termination.

Ann Wolff made the final decision to terminate Jones because she did not believe that he was working remotely in accordance with the agreement. In fact, she believed that he was deceiving the company. The Court credits Wolff's assertion that she was not aware that Jones had mentioned the FLSA to Ortego in the April 24th meeting. Wolff was not aware that Jones had any issue with Peoples Health's paid time off policy.

On May 10, 2017, Ortego advised Jones of Peoples Health's decision to terminate his employment. Once again, Jones secretly recorded the conversation. (Exhibit 47). Even though Wolff made the final decision, she consulted with Ortego and Bonck, who were in favor of termination. Bonck, who did not have the authority to terminate Jones on his own, had recommended in the past that Jones be terminated. Graham was not consulted about the decision to terminate Jones but he did support the action. The only person involved with the termination who knew anything about the FLSA being mentioned at the April 24th meeting was Ortego and she testified that it played no role in the termination decision. The Court credits her testimony.

The Court does not credit Jones's assertion that he was not given the chance to explain his compliance with the remote work arrangement. Jones's secret recording/transcript of the May 10th termination meeting demonstrates that Jones did not even try. Jones's primary concern after he was terminated was interjecting the FLSA into the conversation.

Jones's contention that his problems at Peoples Heath began after the April 24th meeting when he mentioned the FLSA to Ortego is false. Jones had a significant history of performance problems during the four years that he was employed at Peoples Health. The Court does not credit Jones's testimony that he was surprised at being fired. Rather, Jones suspected that termination (or some other severe form of discipline) was imminent after the heated April 21st meeting with Bonck and Graham, both of whom were already convinced that Jones should be terminated. That Jones then immediately requested a meeting with Ortego, who did not work in human resources, to bring up the FLSA for the first time—a meeting that Jones would secretly record—suggests a

strategy to lay the groundwork for an FLSA retaliation claim. Therefore, the temporal proximity between Jones mentioning the FLSA and his termination derives from Jones taking deliberate actions when he suspected that he was about to be fired.

## II. CONCLUSIONS OF LAW

Jones brings this action under the anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3).

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers on the federal district courts original jurisdiction over claims that arise under the laws of the United States.

Venue is proper in this district and is not contested.

To prevail in an FLSA action, the plaintiff must prove 1) an employment relationship with the defendant, 2) coverage under the FLSA, and 3) a violation of the FLSA.

At all times relevant Jones was employed by Peoples Health. Peoples Health was a covered employer under the FLSA's "enterprise coverage" provision. 29 U.S.C. § 203(s)(1)(A)(i)-(ii). These first two elements of an FLSA claim are not disputed and are established.

As to the third element of an FLSA claim, *i.e.*, whether Peoples Health violated the FLSA when it terminated Jones on May 10, 2017, Title 29 § 215(a)(3) of the United States Code prohibits an employer from discharging an employee because he has "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA] . . . ." In order to establish a violation, Jones must prove that he engaged in protected activity by filing an FLSA-related complaint, and that Peoples Health

terminated him for that reason.

The "protected activity" that Jones's retaliation claim is grounded upon is his brief reference to the FLSA at the April 24, 2017 meeting with Ortego.

An oral complaint of a violation of the FLSA made to the employer may satisfy the "filed any complaint" requirement of the statute. *See Kasten v. Saint-Gobain Perf. Plastics Corp.*, 563 U.S. 1, 17 (2011); *see also Hagan v. Echostar Satellite*, LLC, 529 F.3d 617, 626 (5th Cir. 2008) (adopting the majority rule that allows an informal, internal complaint to constitute protected activity). But in order for an employee's communication to constitute a "complaint," the employer must have fair notice that an employee is making a complaint that could subject the employer to a subsequent claim of retaliation. *Starnes v. Wallace*, 849 F.3d 627, 632 (5th Cir. 2017) (quoting *Lasater v. Tex. A&M Univ.-Comm.*, 495 Fed. Appx. 458, 461 (5th Cir. 2012)). The "complaint" must be sufficiently clear and detailed such that a reasonable employer will understand it, in light of both content and context, as an assertion of rights protected by the FLSA. *Id.* In order to qualify, the complaint must be framed in terms of potential illegality or concern some violation of law. *Hagan*, 529 F.3d at 626; *Lasater*, 495 Fed. Appx. at 461 (citing *Hagan*, 529 F.3d at 626).

Jones's sole reference to the FLSA during the thirty-minute April 24th meeting, made in conjunction with his complaints about Peoples Health's paid time off policy, is not framed in terms of potential illegality or violations of the law. But what really causes the Court to question whether the conversation constitutes a "complaint" is that Jones took deliberate steps to avoid raising his concerns with the human resources department. Ortego had never worked in human resources and she had no training in

the FLSA. A trained human resources person like Ann Wolff would have understood what Jones was complaining about (regardless of whether it was actually a violation of the FLSA), and she would have understood the potential legal ramifications of the conversation. But it is apparent from the recording/transcript of the April 24th meeting that Ortego did not understand what Jones was complaining about with respect to the paid time off policy, and the Court has no doubt that Ortego did not perceive that Jones was lodging an FLSA complaint. Moreover, Jones pleaded with Ortego to keep the conversation confidential because he did not trust Wolff and others. The April 24th conversation could not have given Peoples Health fair notice that Jones was making an FLSA complaint so as to subject the company to a subsequent claim of retaliation.

But even if the discussion with Ortego at the April 24th meeting constitutes a "complaint" sufficient to satisfy the FLSA's "protected activity" requirement, Jones's FLSA claim fails nonetheless because Jones did not prove the causation component of his claim.

In an FLSA retaliation case the employee must prove that the adverse employment action would not have occurred "but for" plaintiff's protected activity. *Kanida v. Gulf Coast Med. Personnel LP*, 363 F.3d 568, 580 (5th Cir. 2004) (citing *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)). This is a more demanding causation standard than the motivating-factor standard. *See Univ. of Tex. S.W. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).

Peoples Health terminated Jones because he did not comply with the terms of the remote work agreement. Moreover, Jones's performance problems were ongoing. Jones did not impugn the credible testimony of Peoples Health's witnesses who testified

that the FLSA played no part in the decision to fire Jones.

Moreover, the final decisionmaker must be aware of the protected activity or he must have been improperly influenced by some with retaliatory intent. *Starnes*, 849 F. 3d at 636 n.7 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)). As instructed by Jones, Ortego did not share the details of the April 24th meeting with anyone including Wolff who made the final decision to terminate Jones. The FLSA therefore could not have played a part in the decision to fire Jones.

Jones did not prove that Peoples Health would not have terminated him but for the FLSA discussion at the April 24th meeting with Ortego.

Peoples Health was well within its rights to terminate Jones's employment. Peoples Health did not violate the anti-retaliation prohibition of the FLSA when it terminated Jones on May 10, 2017.

Defendant New Orleans Regional Physician Hospital Organization, Inc. d/b/a Peoples Health Network is entitled to judgment in its favor.

November 15, 2019

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE